# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 398 | DATE | 10/24/2002 |
| CASE TITLE | Walton Risk Services, Inc. vs. Clarendon America Insurance Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Counter-defendants Miller, Herbers, Lehman & Associates, Joseph A. Herbers, and Robert Walling's motion to dismiss counts IV and V of Clarendon America Insurance Company's third amended counterclaim [47-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 25 2002 | |
| | Notified counsel by telephone. | | date docketed | 69 |
| | Docketing to mail notices. | | *cm* | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 10/24/2002 | |
| | | | date mailed notice | |
| | IS | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | IS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WALTON RISK SERVICES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CLARENDON AMERICA INSURANCE ) <br> COMPANY, a New Jersey corporation, ) <br> ) <br> Defendant. ) | Case No. 01 C 0398 <br><br> Magistrate Judge <br> Martin C. Ashman |

## MEMORANDUM OPINION AND ORDER

Before the Court is Counter-Defendants Miller, Herbers, Lehman & Associates, Joseph A. Herbers, and Robert Walling's motion to dismiss Counts IV (professional negligence) and V (negligent misrepresentation) of Clarendon America Insurance Company's Third Amended Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the sake of convenience, the Counter-Defendants listed above will be referred to collectively as MHL in this opinion. For the following reasons, the Court denies MHL's motion to dismiss.

### I. Background

For purposes of this motion to dismiss, the facts alleged in the Complaint and Third Amended Counterclaim are taken as true.

In 1997, Clarendon America Insurance Company entered into an agency agreement with Walton Risk Services, Inc. whereby Walton was given the authority to produce and administer

---

[1] The parties have consented to have this Court conduct any and all proceedings, including the entry of final judgment. See 28 U.S.C. § 636(c); Local R. 73.1(b).

insurance policies for Clarendon. At the same time, Clarendon entered into a reinsurance agreement with Agora Syndicate, Inc.,[2] an affiliate of Walton.[3] The reinsurance agreement transferred the insurance risk for the policies Walton issued from Clarendon to Agora. As part of the 1997 arrangement, Clarendon and Agora entered into a Trust Agreement which required Agora open a Trust Account and maintain a balance in the Trust Account equal to at least 102% of Agora's obligations to Clarendon under the Reinsurance Agreement. The relationship with Clarendon represented approximately 98% of Agora's business during 1999.

Miller, Herbers, Lehman & Associates is an actuarial firm which, since at least 1996, has provided actuarial services for Agora. Joseph Herbers and Robert Walling are certified actuaries and principals of Miller, Herbers, Lehman & Associates. The Third Amended Counterclaim alleges that MHL knew of the business relationship among Agora, Walton, and Clarendon, i.e. that Walton produced and administered insurance policies as an agent of Clarendon, and that Agora reinsured these policies. If Agora could not fulfill its reinsurance obligations, then Clarendon would remain liable for exposure under the policies.

MHL was hired to perform loss reserve analyses of Agora to review the reasonableness of held loss and loss adjustment expense reserves and to render a statement of actuarial opinion (the "Loss Reserve Reports"). These analyses are required under Illinois law. One purpose of the Loss Reserve Reports was to evaluate whether Agora's reserves reasonably provided for all unpaid loss and loss adjustment expense obligations as of a particular date. The Loss Reserve Reports were of critical importance to Clarendon because it used the reports to evaluate Agora's

---

[2] Agora is not a party to this action.

[3] Walton and Agora shared officers and directors.

financial ability to meet the reinsurance obligations. Moreover, MHL knew that Clarendon would receive copies of the Loss Reserve Reports and would rely upon MHL's conclusions regarding the adequacy of Agora's reserves.[4] Clarendon also relied upon the Loss Reserve Reports to determine whether Agora had placed sufficient funds in the Trust Account.

The Loss Reserve Report at issue was prepared by MHL to review the reasonableness of held loss and loss adjustment expense reserves as of December 31, 1999 (the "1999 Report"). It was issued in March, 2000. The 1999 Report concluded that Agora's reserves were adequate to meet all unpaid loss and loss adjustment expense obligations.[5] However, MHL selected parameters unreasonably and made assumptions that resulted in a loss reserve report that understated Agora's obligations by over $12,000,000.00.

The 1999 Report contained limiting language regarding MHL's "best estimate of required reserves":

> The amount of uncertainty regarding the beneficial impact of recent changes in claims handling philosophy on required reserve levels for loss adjustment expenses is considerable and warrants close scrutiny as experience develops in the near future. . . . We have relied upon data and information supplied by Agora Management. . . . Loss and loss adjustment expense (LAE) reserve estimates are subject to potential errors of estimation due to the fact that the ultimate liability for claims is subject to the outcome of events yet to occur, e.g. jury decisions and attitudes of claimants with respect to settlements. Thus no assurance can be given as to the adequacy of any recommended reserve levels. . . . However, it should be

---

[4] Clarendon alleges, "[a] direct purpose of the preparation of the Loss Reserve Reports was so that Clarendon could rely upon the Loss Reserve Reports in determining whether it would continue its relationship with Agora under the Reinsurance Agreement." (3d Am. Countercl. at ¶ 51.)

[5] The 1999 Report concluded that the held reserves were deficient by approximately $1.78 million on a direct basis. MHL determined that even with this deficiency, the held reserves made a reasonable provision for all unpaid losses and loss adjustment expense obligations.

- 3 -

recognized that future loss emergence will likely deviate, perhaps substantially, from our estimates.

In the fall of 2000, KPMG was retained to investigate Agora's held reserves. The investigation revealed that Agora's held reserves were deficient by at least $15,392,040.00. Subsequently, Agora was found to be insolvent.

Thereafter, Walton filed a complaint against Clarendon, and Clarendon counter-sued, naming Walton, Roger A. Mitchell, Laurence L. Lacaillade,[6] Miller, Herbers, Lehman & Associates, Joseph A. Herbers, and Robert Walling as Counter-Defendants.

## II. Discussion

### A. Standard

To decide a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we must accept all factual allegations in the Complaint and Third Amended Counterclaim as true and draw all reasonable inferences in favor of Clarendon. *See Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). The Court may dismiss the claims only if it is clear that Clarendon can prove no set of facts in support of its claim that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### B. Joinder

Before addressing whether Counts IV and V should be dismissed, the court first finds it necessary to determine whether MHL was properly named as a counter-defendant. MIIL claims

---

[6] Roger A. Mitchell and Laurence L. Lacaillade are officers of Walton and Agora. Neither of them are participants in this motion to dismiss.

- 4 -

that it cannot properly be named as a counter-defendant pursuant to Federal Rule of Civil Procedure 13(h), and that Clarendon is attempting to "circumvent" Rule 14.

Under Rule 13, "[p]ersons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." Persons may be joined under Rule 19 if in their "absence complete relief cannot be accorded among those already parties . . . ." Rule 20 states that "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

Counter-Defendants MHL are properly parties to this action. The "same transaction, occurrence, or series of transactions or occurrences" is set forth in the Complaint and in Clarendon's Third Amended Counterclaim. The common occurrences and transactions begin with the initial relationship between Walton, Agora, and Clarendon, and the hiring of MHL, and continue on through a series of events, primarily the preparation of the 1999 Report, that all culminated in the judicial determination that Agora was insolvent. Center to the account is Agora's deteriorating financial condition which was kept from Clarendon. MHL's actions were part of what kept Agora's true condition from Clarendon.

Contrary to MHL's argument, the use of Rule 13 is not a runaround of Rule 14(a). Clarendon could bring a third-party claim under Rule 14 against "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." But this is not what Clarendon is alleging--Clarendon is not

alleging that MHL is responsible for all or part of Clarendon's potential liability to Walton. Thus, the joinder of MHL under Rule 13 and 20(a) is proper. *See Desmond & Ahern, Ltd. v. Scheffki*, No. 01 C 6098, 2001 WL 1646562, at *11-12 (N.D. Ill. Dec. 21, 2001); *Nuveen Invs. v. Hogan*, No. 00 C 7489, 2001 WL 881363, at *7 (N.D. Ill. Aug. 2, 2001).

### C. Professional Negligence (Count IV) and Negligent Misrepresentation (Count V)

The parties do not dispute that Illinois law governs the state law claims. As expected, the causes of action for professional negligence and negligent misrepresentation have some overlapping elements and the parties sometimes merge their discussions of the elements of both causes.

To state a cause of action for professional negligence, as it attempts to do in Count IV, Clarendon must allege the existence of a duty owed by MHL to Clarendon, a breach of that duty, and an injury proximately resulting from that breach. *See Pelham v. Griesheimer*, 440 N.E.2d 96, 98 (Ill. 1982). Clarendon must also allege the elements for negligent misrepresentation: (1) defendant's duty to communicate accurate information; (2) a false statement of material fact; (3) defendant's carelessness or negligence in ascertaining the truth or falsity of the statement; (4) defendant's intent to induce the other party to act; (5) the plaintiff's reliance on the false statement; and (6) plaintiff's damages resulting from that reliance. *See Fremont Fin. Corp. v. IPC/Levy, Inc.*, 994 F. Supp. 988, 990 (N.D. Ill. 1998) (citation omitted).

1. <u>Duty</u>

MHL begins its discussion by claiming that MIIL owed no duty to Clarendon. It argues that Clarendon has not adequately alleged either of the two situations in which Illinois law allows a duty to be imposed in professional negligence cases: 1) where a professional-client relationship exists, or 2) where a person is a primary intended beneficiary of another professional-client relationship. Clarendon responds that although it was not in a client relationship with MHL, a direct purpose of the Loss Reserve Reports was so that Clarendon could determine whether it should continue its reinsurance agreement with Agora.

The existence of a duty is a question of law, and the answer depends on whether there is such a relationship between the defendant and the plaintiff that the defendant has an obligation of reasonable conduct for the benefit of the plaintiff. *Gallagher Corp. v. Russ*, 721 N.E.2d 605, 610 (Ill. App. Ct. 1999) (citing *Pelham v. Griesheimer*, 440 N.E.2d 96 (Ill. 1982)). In *Pelham v. Griesheimer*, an attorney malpractice case, the Illinois Supreme Court first stated what has come to be known as the primary intent rule: "to establish a duty owed by the defendant attorney to the nonclient[,] the nonclient must allege and prove that the intent of the client to benefit the nonclient third party was the primary or direct purpose of the transaction or relationship." 440 N.E.2d at 99; *see also Brumley v. Touche, Ross & Co.*, 487 N.E.2d 641, 644 (Ill. App. Ct. 1985) (holding that in tort actions brought against accountants "it is apparent that to be sufficient plaintiff's complaint must allege facts showing that the purpose and intent of the accountant-client relationship was to benefit or influence the third-party plaintiff").

Clarendon, at paragraph 51 of the Third Amended Counterclaim, alleges that a "direct purpose of the preparation of the Loss Reserve Reports was so that Clarendon could rely upon

the Loss Reserve Reports in determining whether it would continue its relationship with Agora." While this appears to satisfy the pleading requirements, MHL responds that the primary purpose of the actuarial services it performed was to benefit Agora. Specifically, Agora retained MHL in order to comply with the requirements of 215 ILCS 5/107.13(c) ("By March 1 of each year, each syndicate shall file with the Director and the Board a certification of loss reserves signed by a fellow or associate of the Casualty Actuary Society . . ."). According to the words of the 1999 Report, the report was "prepared for the internal use of Agora management. . . . [but] that Agora may wish to share the results of this report with their auditors, financial institutions, reinsurers, the Illinois Department of Insurance, and INEX . . . . Such distribution rights are hereby granted on the condition that the entire report . . . be distributed and that all recipients be made aware that MHL is available to answer questions regarding the report."

MHL knew that the 1999 Report was going to be shown to Clarendon, among others. MHL knew that Clarendon would rely upon the 1999 Report and would use the report to determine whether Agora should continue to provide reinsurance. *See Brumley*, 487 N.E.2d at 644 (holding that plaintiff stated a cause of action where the complaint alleged that the purpose and intent of the accountant-client relationship was to benefit or influence the third party); *Wafra Leasing Corp. v. Prime Capital Corp.*, 192 F. Supp. 2d 852, 873 (N.D. Ill. 2002) (plaintiff's allegations that defendant accountants knew that plaintiff had been given a copy of an audit by defendant's client and that plaintiff was relying on it were sufficient to withstand a motion to dismiss even though the plain language of the opinion letter limited the liability to the addressees).

Because we find that Clarendon has sufficiently alleged a duty under its professional negligence claim, it is not surprising that we also find that Clarendon has alleged a duty under its negligent misrepresentation claim. *Cf. Gallagher*, 721 N.E.2d at 613 (noting that if there is no duty in a professional negligence claim, the same reasoning will preclude a finding of a duty in a negligent misrepresentation claim). Briefly, Illinois courts have implied "a duty to communicate accurate information in situations involving one who in the course of his business or profession supplies information for the guidance of others in their business transactions." *Fremont Fin. Corp.*, 994 F. Supp. at 991 (citations omitted). The duty may be owed to one who is not in privity with the defendant. *Id.* (*citing Rozny v. Marnul*, 250 N.E.2d 656, 663 (1969)).

Thus, the Court must make two determinations. First, we must determine whether the Third Amended Counterclaim sufficiently alleges that MHL had a duty to communicate accurate information. This inquiry turns on whether MHL was in the business of supplying information for the guidance of others in their commercial transactions. *See id.* MHL, an actuarial firm, was hired to prepare the Loss Reserve Reports. A reasonable inference is that it was hired to guide firms, such as Clarendon, to determine whether they should continue to do business with Agora.

Secondly, we must now determine if MHL owed its duty to communicate accurate information to Clarendon. *See id.* Those who rely on the information may claim liability against a defendant "if (1) use of the information was foreseeable; (2) the defendant knew the information would be used and relied upon by persons other than those in privity with him; and (3) the defendant's potential liability is restricted to a comparatively small group." *Id.* at 992 (citations omitted). These three criteria are all met there. It was foreseeable, and MHL knew that Clarendon would rely upon this information to determine whether it would continue to do

business with Agora. Under these circumstances, MHL's potential liability would be restricted to a comparatively small group -- Clarendon was 98% of Agora's business. Thus the Court finds that Clarendon sufficiently alleges that MHL owed Clarendon a duty to convey accurate information in the 1999 Report.

2. Damages

MHL argues that Clarendon has failed to allege actual damages and this warrants the dismissal of both Count IV and V. Damages are not presumed under Illinois law. *Glass v. Pitler*, 657 N.E.2d 1075, 1078 (Ill. App. Ct. 1995). MHL argues that Clarendon's alleged exposure to future losses for which it is now the primary insurer are too speculative and uncertain. *See Griffin v. Goldenhersh*, 752 N.E.2d 1232, 1241 (Ill. App. Ct. 2001).

Clarendon responds that its damages are "reasonably certain to occur" and the present value of future claims can be determined by qualified actuaries. *See Henderson v. Sheahan*, 196 F.3d 839, 848-49 (7th Cir. 1999) (quoting *Morrissy v. Eli Lilly & Co.*, 394 N.E.2d 1369, 1376 (Ill. App. Ct. 1979)). Clarendon also argues that when it alleged that its damages included but were not limited to its exposure, it meant that its damages may also include the insurance premiums that it paid to Agora in reliance on the 1999 Report. At this point in time, without needing to decide the scope or amount of damages that Clarendon may be entitled to recover, if any, the Court finds that Clarendon has adequately alleged the damage element of each of its claims to withstand a motion to dismiss.

3. <u>Causation</u>

As an apparent last-ditch effort to leave nothing out of its panoply of arguments, MIIL argues that Clarendon fails to allege that had the undisclosed risk been known, it would not have accepted the risk and consented to continuing its business with Agora. In other words, Clarendon has failed to allege "but for" causation. *See Radtke v. Murphy*, 728 N.E.2d 715, 720 (Ill. App. Ct. 2000) (claim for legal malpractice must allege "but for" causation). However, Clarendon has alleged that but for the negligently prepared 1999 Report, it would not have sustained the damages that it did. Furthermore, according to additional supplemental briefs submitted to this Court at our request, Clarendon could have stopped issuing policies through Walton had it been aware that Agora had insufficient funds in its loss reserve accounts. Clarendon has adequately alleged causation.

4. MHL's remaining arguments relating to negligent misrepresentation: fact versus opinion, the bespeaks <u>caution doctrine, and reliance.</u>

MIIL additionally argues that the 1999 Report was "opinion," not fact, that the "bespeaks caution" doctrine rendered its opinion immaterial, and that Clarendon did not properly allege reasonable reliance. We will deal with each of these in turn.

First, because expressions of opinion are not actionable, the basis for a negligent misrepresentation action must be a statement of fact. *Lagen v. Balcor Co.*, 653 N.E.2d 968, 973 (Ill. App. Ct. 1995). A representation, such as a financial projection, "is one of opinion rather than fact if it only expresses the speaker's belief, without certainty, as to the existence of a fact." *Id.* (quotations omitted). MIIL argues that actuarial opinions are mere opinions that cannot be the basis for a claim of misrepresentation. Clarendon counters that the actuarial analysis of the

reserves of an insurance company fits more in the fact category than the opinion category, especially where the actuaries are in the business of supplying information. The Court is more persuaded by Clarendon's position than it is by MHL and the cases upon which it relies. Although not addressing the issue of fact versus opinion directly, in *Gallagher*, the court found that actuaries who were hired to determine the necessary funding levels of an employee retirement fund could be liable to the fund for negligent misrepresentation. 721 N.E.2d at 613. *See also Levy v. Versar, Inc.*, No. 92 C 4836, 1993 WL 408360, at *3 (N.D. Ill. Oct. 12, 1993) (environmental report prepared by engineers regarding their testing of a property could be the basis of a claim for negligent misrepresentation). The fact that MHL used actuarial tools and assumptions does not excuse it from liability for negligent misrepresentation.

Next, MHL argues that its motion should be granted due to the bespeaks caution doctrine. Under this doctrine, the "meaningful cautionary language in an offering document can negate the materiality of any alleged misrepresentation or omission and may thus form the basis for granting a motion to dismiss . . . ." *Lagen*, 653 N.E.2d at 974.[7] However, "when properly construed, [this doctrine] merely represents the pragmatic application of two fundamental concepts: materiality and reliance." *Id.* (citation omitted). MHL is thus saying that the cautionary language it used made the statements in the 1999 Report immaterial. The cautionary language it used is set forth in the Background section above, but to reiterate, includes the caution that "[l]oss and loss adjustment expense (LAE) reserve estimates are subject to potential errors of estimation due to

---

[7] We do not need to decide whether the bespeaks caution doctrine only applies in the context of security litigation, as Clarendon urges, for we are using it only for the "unremarkable proposition that statements must be analyzed in context." *See Lagen*, 653 N.E.2d at 973 (finding that bespeaks doctrine may apply to common-law fraud claim where the alleged misrepresentations were in a private placement memorandum) (quotation omitted).

the fact that the ultimate liability for claims is subject to the outcome of events yet to occur . . . . Thus no assurance can be given as to the adequacy of any recommended reserve levels. . . . However, it should be recognized that future loss emergence will likely deviate, perhaps substantially, from our estimates." This warning does not alert Clarendon that MHL allegedly "consistently and unreasonably select[ed] parameters and [made] assumptions that produced a low reserve indication, and [failed] to take available and appropriate steps to verify the accuracy of their assumption . . . ." (3d. Am. Countercl. at ¶ 59.) *See Harden v. Raffensperger, Hughes & Co.*, 65 F.3d 1392, 1404 (7th Cir. 1994) ("cautionary language 'must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which the plaintiffs challenge.'") (quoting *In Re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 371-72 (3d Cir. 1993)). The cautionary statements used by MHL without the context of the facts surrounding the report are not sufficient to render the 1999 Report and its conclusion regarding the low reserve indication immaterial at the motion to dismiss stage.

We reach the same conclusion with respect to the reliance element. Clarendon has alleged that it relied upon the 1999 Report. MHL responds that Clarendon's reliance was not reasonable, given the cautionary language used in the report and because Clarendon was a sophisticated, multiline insurance carrier which had the ability to hire its own actuarial firm. MHL was hired to determine the required level of reserves and to write a report that would be given to the State of Illinois and Clarendon, among others. Based only on the limited facts contained in the Third Amended Counterclaim, it was not unreasonable for Clarendon to rely upon the actuarial report of a reputable actuarial firm.

Furthermore, Clarendon alleged that it continued its relationship with Agora based on the 1999 Report. MHL points out that it was barely three months after the report came out that Agora's financial difficulties became known to Clarendon, however, it is the existence of allegations of reliance that we are determining at this juncture, not the amount of time for which there was reliance. Clarendon has adequately alleged both a claim for negligent misrepresentation, and a claim for professional negligence.

### III. Conclusion

For the foregoing reasons, MHL's motion to dismiss Counts IV and V of the Third Amended Counterclaim is denied.

**ENTER ORDER:**

_____
MARTIN C. ASHMAN
United States Magistrate Judge

**Dated:** October 24, 2002.

Copies have been mailed to:

| | |
|---|---|
| MITCHELL A. ORPETT, Esq.<br>Tribler, Orpett & Crone, P.C.<br>30 North LaSalle Street<br>Suite 2200<br>Chicago, IL 60602 | TERRY F. MORITZ, Esq.<br>KENNETH S. ULRICH, Esq.<br>Goldberg, Kohn, Bell, Black,<br>  Rosenbloom & Moritz, Ltd.<br>55 East Monroe Street<br>Suite 3700<br>Chicago, IL 60603 |
| Attorney for Plaintiff | Attorneys for Defendant |

RICHARD M. KAPLAN, Esq.
GEORGE K. FLYNN, Esq.
Clausen Miller, P.C.
10 South LaSalle Street
Chicago, IL 60603-1098

Attorneys for Counter-Defendants,
  Miller, Herbers, Lehman & Associates,
  Joseph A. Herbers, and Robert Walling