# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 398 | DATE | 1/11/2005 |
| CASE TITLE | Walton Risk Services, Inc. vs. Clarendon America Insurance Company | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Counter-defendants Miller, Herbers, Lehman & Associates, Joseph A. Herbers and Robert Wailing's motion to dismiss counts IV and V of Clarendon America Insurance Company's fourth amended counterclaim [74-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JAN 1 2 2005 | |
| | Notified counsel by telephone. | | date docketed | 87 |
| | Docketing to mail notices. | | rbf | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 1/11/2005 | |
| IS | courtroom deputy's initials | 2005 JAN 12 AM 9: | date mailed notice IS | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**DOCKETED**
**JAN 1 2 2005**

| | |
|---|---|
| WALTON RISK SERVICES, INC., an Illinois corporation, | |
| Plaintiff, | |
| v. | Case No. 01 C 0398 |
| CLARENDON AMERICA INSURANCE COMPANY, a New Jersey corporation, | Magistrate Judge Martin C. Ashman |
| Defendant. | |
| CLARENDON AMERICA INSURANCE COMPANY, | |
| Counter-Plaintiff, | |
| v. | |
| WALTON RISK SERVICES, INC., an Illinois corporation, ROGER A. MITCHELL, LAURENCE L. LACAILLADE, MILLER, HERBERS, LEHMAN & ASSOCIATES, JOSEPH A. HERBERS, and ROBERT WALLING, | |
| Counter-Defendants. | |

## MEMORANDUM OPINION AND ORDER

Counter-Plaintiff Clarendon America Insurance Company's ("Clarendon") Fourth Amended Counterclaim contains a Count IV and a Count V that allege professional negligence and negligent misrepresentation, respectively, against Counter-Defendants Miller, Herbers,

Lehman & Associates, Joseph A. Herbers and Robert Walling (collectively, "MHL"). MHL argues that, to the extent they purport to state claims for services rendered by MHL prior to 1999, Clarendon's Count IV and Count V claims are barred by the statute of limitations. MHL now moves this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Clarendon's Count IV and Count V to the extent they purport to state claims for services rendered by MHL prior to 1999. The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a). For the reasons that follow, MHL's motion to dismiss is denied.

## I. Background[1]

### A. Clarendon

Clarendon is a New Jersey insurance corporation with its principal place of business in New Jersey. (Clarendon's Countercl. ¶ 1.) On or about April 1, 1997, Clarendon entered into a Multiple Line Property and Casualty Quota Share Reinsurance Agreement with Agora Syndicate, Inc., an Illinois insurance corporation. (Id. ¶ 11.) Under this agreement, Clarendon purchased reinsurance from Agora, thereby transferring the insurance risk from itself, the insurer, to Agora, the reinsurer. (Id.) In accordance with their agreement, and in order to secure Agora's obligations pursuant to the Reinsurance Agreement, as of May 20, 1997, Clarendon and Agora entered into a Trust Agreement, pursuant to which a trust account was established. (Id. ¶ 12.) The Trust Agreement required Agora to maintain a balance in the Trust Account equal to at least

---

[1] For purposes of this motion, the Court relies on Clarendon's Fourth Amended Counterclaim for the background facts.

102% of Agora's obligations to Clarendon under the Reinsurance Agreement. (Id. ¶ 13.) According to Clarendon, in the event that Agora's held reserves were too low and Agora had not made a reasonable provision for all unpaid loss and loss adjustment expense obligations, Clarendon would be obligated to cover any shortfall if Agora were unable to do so. (Id. ¶ 56.)

On or about April 1, 1997, Clarendon and Walton Risk Services, Inc. ("Walton"), an affiliate of Agora, entered into a General Agency Agreement pursuant to which Clarendon granted Walton authority to produce and administer insurance polices and renewals thereof for certain coverages in certain states, as specified in the Agency Agreement. (Id. ¶ 14.)

During the Fall of 1999, a dispute arose between Clarendon and Agora regarding a shortfall in the funding of the Trust Account. (Id. ¶ 15.) Clarendon and Agora negotiated a resolution whereby Agora executed a Promissory Note in favor of Clarendon to secure Agora's obligations to Clarendon to fund the Trust Account. (Id. ¶ 16.) Under the terms of the Promissory Note, Agora was required to pay Clarendon $1.8 million plus accrued interest on the unpaid principal balance at the rate of five percent per annum on or before April 18, 2000. (Id.) The Promissory Note and a Guaranty executed on February 1, 2000, also stated that Walton would guarantee Agora's obligations by turning over all commissions due Walton under its General Agency Agreement with Clarendon for business written with an effective date on or after January 1, 2000. (Id. ¶ 16-18.) This obligation would end when Clarendon received its full $1.8 million with interest. (Id. ¶ 17.)

On September 14, 2000, the Circuit Court of Cook Count, Chancery Division, entered an Order of Conservation, pursuant to which that court found Agora was insolvent. (Id. ¶ 20.) To date, Agora had made no payments under the Promissory Note. (Id. ¶ 19.)

### B.  MHL

MHL is an Illinois corporation with its principal place of business in Bloomington, Illinois. (Id. ¶ 53.) MHL is an actuarial firm and provided actuarial services to Agora since 1996. (Id. ¶ 54.) According to Clarendon, MHL periodically performed loss reserve analysis of Agora to review the reasonableness of held loss and loss adjustment expense reserves and to render a statement of actuarial opinion. (Id. ¶ 59.) Specifically, for the years 1996, 1997, 1998 and 1999, MHL prepared the Statements of Actuarial Opinion for Agora's Annual Report and Agora's Loss Reserve Reports and assisted in the preparation of Agora's Annual Statements. (Id. ¶ 64-75.) MHL's Statements of Actuarial Opinion for Agora's Annual Statements were filed with the Insurance Department of the State of Illinois. (Id. ¶ 57.) Clarendon alleges that MHL's statements from 1996 to 1999 stated that unpaid loss and loss adjustment expenses contained in the Annual Statements reconciled. (Id.)

### C.  Grievance Between Clarendon and MHL

In early 2000, the Illinois Director of Insurance, retained the accounting firm KPMG to audit Agora's financial condition. (Id. ¶ 85.) KPMG reviewed Agora's loss and loss adjustment expense reserves as of June 30, 2000, and issued an actuarial report. (Id.) The report concluded that Agora's held reserves were deficient by at least $15,392,040. (Id.)

Clarendon claims that it maintained its relationship with Agora for as long as it did because of MHL's failure to disclose Agora's financial problems. (Id. ¶ 87.) According to Clarendon, the Loss Reserve Reports produced by MHL were important for evaluating whether Agora's held reserves made a reasonable provision for all unpaid loss and loss adjustment

expense obligations. (Id. ¶ 86.) Clarendon alleges that MHL's Statement of Actuarial Opinion for Agora's Annual Statement signaled to those reviewing the Loss Reserve Reports that Agora was complying with relevant standards and Illinois law in preparing its Annual Statements for the Illinois Insurance Department and that Agora was statutorily solvent. (Id.) Clarendon claims that it relied on the Loss Reserve Reports when it: (1) gauged Agora's financial wherewithal to meet its reinsurance obligations, (2) determined that Agora had placed sufficient funds in the Trust Account (a balance equal to at least 102% of Agora's obligations to Clarendon), and (3) generally determined Agora's status. (Id. ¶ 87-88.)

According to Clarendon, the Annual Statements for 1996, 1997, 1998 and 1999 contained errors and improprieties that MHL should have identified and reported. (Id. ¶ 76.) Clarendon alleges that the unpaid losses and loss adjustments did not reconcile and that Agora should have been required to book significant additional liabilities. (Id. ¶ 58.) Clarendon accuses MHL of relying on unreasonable assumptions with regard to Agora's finances and never taking appropriate and available steps to verify the accuracy of those assumptions. (Id. ¶ 79-82.) Clarendon also accuses MHL of making false statements of fact in the various reports, thereby giving the false impression that Agora was statutorily solvent and had adequate reserves. (Id. ¶ 92-93, 95.) Clarendon concludes that MHL failed to act with reasonable care and competence required of an actuary. (Id. ¶ 86.)

Clarendon further alleges that MHL understood the relationship between Clarendon, Agora and Walton, and that MHL therefore owed Clarendon a duty of reasonable care and competence required of an actuary. (Id. ¶ 81-82, 86, 91.) Clarendon alleges that MHL has always known that Walton was an affiliate of Agora and that, pursuant to the Agency Agreement,

- 5 -

Walton produced and administered insurance policies as an agent of Clarendon, and that Agora in turn reinsured these policies pursuant to the Reinsurance Agreement. (Id. ¶ 56.) Clarendon alleges that MHL knew that if Agora could not fulfill its reinsurance obligations, then Clarendon, as the primary insurer, would remain liable for exposure under the policies without recourse. (Id.)

### D. Litigation History

On or about December 1, 2000, Walton commenced an action in the Circuit Court of Cook County, Illinois, asserting that Clarendon owed it money for claim services pursuant to their contract. (MHL's Mem. Supp. Mot. at 2.) Clarendon had the suit removed to Federal Court on January 22, 2001, and filed its answer and counter-claim on February 16, 2001. (Id.) Clarendon served a non-party document subpoena on MHL in October 2001. (Id.) In December 2001, Clarendon deposed Joseph A. Herbers, a principal of MHL. (Id.) During this deposition, Mr. Herbers was asked questions about MHL's preparation of Agora's loss reserve analysis for 1996, 1997, 1998 and 1999. (Id.)

On April 23, 2002, Clarendon filed a Second Amended Counterclaim and Third Party Complaint, adding MHL as a defendant in Counts IV and V. Clarendon filed its Third Amended Counterclaim on June 19, 2002. MHL answered the counterclaim on November 12, 2002. On June 21, 2004, Clarendon sought leave to file its Fourth Amended Counterclaim to include MHL's services rendered prior to 1999. That motion was granted on June 22, 2004, and Clarendon's Answer and Fourth Amended Counterclaim was filed on June 24, 2004. On July 23, 2004, MHL filed this motion to dismiss Counts IV and V of Clarendon's Fourth Amended

Counterclaim to the extent they purport to state claims for services rendered by MHL prior to 1999. Clarendon filed a corrected version of its Fourth Amended Counterclaim on August 3, 2004, and a Response to MHL's Motion to dismiss on August 27, 2004. On September 22, 2004, MHL filed a Reply to Clarendon's Response. And on September 30, 2004, Clarendon filed its Sur-Reply to MHL's Reply. On December 8, 2004, the Court heard oral arguments on the motion to dismiss.

## II. Discussion

MHL files a Rule 12(b)(6) motion to dismiss arguing that, to the extent they purport to state claims for services rendered by MHL prior to 1999, Counts IV and V of Clarendon's Fourth Amended Counterclaim are barred by statute of limitations set out in 735 ILCS 5/13-205. (MHL's Mem. Supp. Mot. at 4-5.) When considering MHL's 12(b)(6) motion, the Court accepts the facts alleged in Clarendon's complaint in the light most favorable to Clarendon, the non-moving party. *Guise v. BWM Mortgage, L.L.C.*, 377 F.3d 795, 798 (7th Cir. 2004). All well-pleaded allegations of Clarendon's complaint must be accepted as true. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Ambiguities in the complaint must be construed in favor of Clarendon. *Id.* Dismissal is proper only if it appears beyond a doubt that Clarendon can prove no set of facts to support the allegations in its claims. *Hernandez v. City of Goshen*, 324 F.3d 535, 537 (7th Cir. 2003).

MHL's motion to dismiss is based on a statute of limitations defense, i.e., an affirmative defense. Fed. R. Civ. P. 8(c). Ordinarily, an affirmative defense does not justify dismissal under Rule 12(b)(6) as litigants need not anticipate or attempt to diffuse potential defenses. *U.S.*

*Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003); *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003). A dismissal may be appropriate, however, where a litigant pleads himself out of court by alleging the ingredients of an affirmative defense. *U.S. Gypsum Co.*, 350 F.3d at 626. In other words, if the existence of a valid affirmative defense is so obvious from the face of the complaint that the suit can be regarded as frivolous, dismissal is justified. *Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002).

Both MHL and Clarendon agree that 735 ILCS 5/13-205 applies to this case. 735 ILCS 5/13-205 states:

> actions on unwritten contracts, expressed or implied, or on awards of arbitration, or to recover damages for an injury done to property, real or personal, or to recover the possession of personal property or damages for the detention or conversion thereof, and all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued.

735 ILCS 5/13-205. Thus, under Illinois law, Clarendon had five years from the time its cause of action accrued to file suit against MHL. Any alleged wrongdoing by MHL that occurred prior to 1999 is now more than five years old and conceivably barred by the statute of limitations set out in 735 ILCS 5/13-205.

### A. The Discovery Rule

Clarendon relies on the discovery rule and argues that its claims against MHL are not barred by the relevant statute of limitations. The essence of the discovery rule is to delay the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused. *Jackson*

*Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (Ill. 1994); *Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 867-68 (Ill. 1981).

Despite MHL's arguments to the contrary, the discovery rule applies in this case. Clarendon's Counts IV and V allege the torts of professional negligence and negligent misrepresentation. The discovery rule applies to tort claims. *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1136 (Ill. 1995). MHL attempts to catagorize Clarendon's Counts IV and V as tort claims arising from breach of contract claims and argues that the discovery rule should not apply to them. (MHL's Reply at 3-4.) "Where a tort arises out of a contractual duty, the period of limitations begins to run at the time the contract is breached, not at the time the damage is sustained or discovered. The principal reason is that the breach itself is actionable." *Resolution Trust Corp. v. Franz*, 909 F. Supp. 1128, 1132 (N.D. Ill. 1995) (internal citations omitted). Thus, in certain circumstances, it makes sense not to apply the discovery rule to tort claims arising out of contract claims because (a) the breach of contractual duty is actionable in and of itself, and (b) the parties have chosen to deal with one another, so the contract "may be stated in terms to minimize the losses from defective performance." *Del Bianco v. Am. Motorists Ins. Co.*, 392 N.E.2d 120, 125 (Ill. App. Ct. 1979). In this case, there was a contractual relationship between MHL and Agora not between MHL and Clarendon. It follows that MHL and Clarendon did not explicitly agree to deal with one another, nor did they have the opportunity to agree on terms to minimize the losses from defective performance. Accordingly, MHL's hybrid argument fails and the discovery rule applies to this case.

Under the discovery rule, the time at which a party has or should have the requisite knowledge to maintain a cause of action is ordinarily a question of fact. *Jackson Jordan, Inc.*,

633 N.E.2d at 631. Clarendon claims that it did not know, and could not have known, of injuries caused by MHL until early 2000, when Agora's financial problems were disclosed. In other words, Clarendon claims that its cause of action accrued, at the earliest, in early 2000. Accordingly, Clarendon argues that the five-year statute of limitations under 735 ILCS 5/13-205 was tolled until early 2000 and therefore does not bar any claims filed against MHL before 2005. (Clarendon's Resp. at 8.)

When viewed in a light most favorable to Clarendon, Clarendon's counterclaim clearly alleges that it first discovered injuries caused by MHL in early 2000. Clarendon asserts that, from 1997 to 1999, MHL's negligence and false representations, specifically with regard to MHL's Loss Reserve Reports, caused Clarendon to believe that Agora could meet its insurance obligations, thereby causing Clarendon to continue doing business in the same manner with Agora. (Clarendon's Countercl. ¶ 86, 96.) Clarendon also states that, as a result of MHL's actions, Clarendon did not know that Agora's held reserves were deficient, nor that Agora was statutorily impaired and insolvent as early as late 1996. (Id. ¶ 87.) According to Clarendon, because of MHL's actions Clarendon was unaware of Agora's financial difficulties until KPMG produced its audit report on Agora in early 2000. (Id. ¶ 85-87, 96.) While Clarendon's counterclaim does not give the exact date on which it discovered its injuries, Clarendon clearly alleges that it was unaware of injuries caused by MHL until early 2000. Thus, for purposes of this 12(b)(6) motion, the Court rejects MHL's claim that Clarendon had knowledge of alleged injuries prior to early 2000.

Clarendon's counterclaim, on its face, is not barred by the five-year statute of limitations. Clarendon alleges that it was unaware of any injury at all until early 2000. A five-year statute of

limitations that does not begin to run until early 2000 will not bar a claim filed in 2004.[2] Because the statute of limitations is not implicated by the facts alleged in Clarendon's counterclaim, the Court finds Clarendon's failure to state a specific date of discovery in early 2000 to be immaterial for the purposes of this motion. *Compare to In re Josefick*, 72 B.R. 393, 401-02 (N.D. Ill 1987) (five-year statute of limitations bars claim where pleadings show that bank knew of injury for six years but lack a date of discovery that might explain bank's failure to bring claim sooner); *Kincheloe v. Farmer*, 214 F.2d 604, 604-05 (7th Cir. 1954) (two-year statute of limitations bars claim where plaintiff sues for six-year-old car accident without pleading specific date of discovery that might explain failure to bring claim sooner). Thus, the Court finds that Clarendon has pled sufficient facts and allegations to implicate the discovery rule, the result being that, for purposes of this 12(b)(6) motion, Counts IV and V of Clarendon's Fourth Amended Counterclaim are not barred at all by the five-year statute of limitations set out in 735 ILCS 5/13-205.

MHL cites to *Marvel Eng'g Co. v. Matson, Driscoll & D'Amico*, 501 N.E.2d 948 (Ill. App. Ct. 1986), and argues that this Court should not apply the discovery rule to this case because Clarendon did not exercise sufficient diligence in discovering MHL's alleged negligence or in bringing its amended claims against MHL. (MHL's Mem. Supp. Mot. at 6.) In *Marvel Eng'g Co.*, despite the plaintiff's claim that he first discovered defendant's misrepresentations of fraud three years earlier, the court refused to toll the five-year statute of limitations with the

---

[2] Having found that a five-year statute of limitations that does not begin to run until early 2000 will not bar a claim filed in 2004, the Court rejects MHL's argument that an injured party has five years from the date it is injured to both discover the injury and file a claim, and that failure to accomplish both within five years results in a statute of limitations bar against all claims.

discovery rule because the plaintiff had notice of both his injury and defendant's involvement when his insurance claim was rejected eight years earlier. 501 N.E.2d at 952. Unlike *Marvel Eng'g Co.*, there is no indication in Clarendon's counterclaim that Clarendon had knowledge of its injury more than five years before filing its amended counterclaim. And unlike *Marvel Eng'g Co.*, Clarendon filed its suit against MHL within five years of discovering its injury. Thus, Clarendon appears to have acted diligently in this case and the discovery rule should apply.

Next, MHL applies an "objective" test and argues that Clarendon's suspicions regarding Agora's insolvency and Clarendon's knowledge of the Agora investigation commenced the running of the statute of limitations. (MHL's Reply at 4.) Where plaintiff suspects defendant of possible wrongdoing, plaintiff cannot sit idly by and wait for defendant to admit his liability. *See Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1116-17 (N.D. Ill. 1998) (finding decades of publicity and lawsuits regarding improper disposal of radioactive waste constituted sufficient notice to plaintiffs of a possible injury, such that plaintiffs should have known of their claim); *McDuffie v. Graco Children's Prods., Inc.*, No. 95 C 5384, 1996 WL 197499, at *4 (N.D. Ill. April 19, 1996) (finding that plaintiff reasonably knows of wrongful injury, and statute of limitations begins to run, when plaintiff suspects that her injury was wrongfully caused). In this case, Clarendon's allegations do not suggest that Clarendon was suspicious of Agora prior to 2000, nor that Clarendon failed to act in a timely manner. Clarendon's counterclaim mentions a 1999 dispute with Agora over the amount of funds in loss reserve. The counterclaim states that the two parties negotiated a new arrangement and that business between the two continued. An investigation of Agora is alleged to have begun in early 2000. Nothing in these claims suggests Clarendon should have suspected negligence or false representations by MHL or Agora prior to

early 2000. Furthermore, nothing about *Casey* or *McDuffie* suggest that this Court should dismiss Clarendon's claims in response to a 12(b)(6) motion. *See McDuffie*, 1996 WL 197499, at *4-5 (*denying* defendant's *summary judgment motion* because of fact dispute as to when plaintiff first suspected that cradle design flaw was responsible for her child's death).

### B.     Equitable Tolling and Estoppel

MHL claims that it is prejudiced by Clarendon's decision to amend Counts IV and V three-and-a-half years after Clarendon learned of MHL's activities, so Clarendon should be estopped from amending Counts IV and V. (MHL's Reply at 5.) MHL cites to *Arroyo v. Henderson*, No. 98 C 0443, 1999 WL 446700 (N.D. Ill. June 23, 1999), and claims that a plaintiff's lack of diligence in pursuing a claim may be prima facie evidence of prejudice to the defendant and grounds for dismissing and/or barring amendment of a claim. (MHL's Reply at 6-7.) MHL's reliance on *Arroyo*, however, is misplaced as *Arroyo* deals explicitly with equitable tolling of statute of limitations and not the discovery rule. 1999 WL 446700, at *4. Equitable tolling and the discovery rule are two separate concepts. Under equitable tolling, the court assumes that the plaintiff knew he had been injured, but the statute of limitations is tolled nonetheless because the plaintiff could not obtain information necessary to file suit. *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003). The discovery rule, on the other hand, does not assume that the plaintiff knew he had been injured. Rather, the discovery rule only postpones the beginning of the limitations period to the date when the plaintiff discovers or should have discovered that he has been injured. *Id.* Because equitable tolling and the discovery

rule are two different concepts, *Arroyo* does not persuade the Court to dismiss Clarendon's claims based on equitable tolling or estoppel grounds.

### III. Conclusion

For the foregoing reasons, the Court denies MHL's motion to dismiss.

**ENTER ORDER:**

*[signature]*
**MARTIN C. ASHMAN**
United States Magistrate Judge

Dated: January 11, 2005.

Copies have been mailed to:

TERRY F. MORITZ, Esq.
KENNETH S. ULRICH, Esq.
SALVADOR K. KAROTTKI, Esq.
Goldberg, Kohn, Bell, Black,
  Rosenbloom & Moritz, Ltd.
55 East Monroe Street
Suite 3700
Chicago, IL 60603

Attorneys for Counter-Plaintiff,
  Clarendon America Insurance
  Company

JAMES O. NOLAN, Esq.
RICHARD M. KAPLAN, Esq.
GEORGE K. FLYNN, Esq.
Clausen Miller P.C.
10 South LaSalle Street
Chicago, IL 60603-1098

Attorneys for Counter-Defendants,
  Miller, Herbers, Lehman & Associates,
  Joseph A. Herbers, and Robert Walling

MITCHELL A. ORPETT, Esq.
KEVIN A. TITUS, Esq.
H. WESLEY SUNU, Esq.
Tribler, Orpett & Meyer, P.C.
30 North LaSalle Street
Suite 2200
Chicago, IL 60602

Attorneys for Counter-Defendants,
  Walton Risk Services, Inc.,
  Roger A. Mitchell, and Laurence L.
  Lacaillade